# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHANTZ GERMAINE PATTERSON, ) <br> a/k/a Chantz Terrance Patterson, ) <br> a/k/a Chank, ) <br> ) <br> Defendant. ) | Case No. 11-CR-0149-002-CVE <br> (13-CV-0621-CVE-PJC) |

## OPINION AND ORDER

On September 18, 2013, defendant Chantz Germaine Patterson, a federal prisoner appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 246). Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

### I.

On August 4, 2011, a criminal complaint was filed charging Joseph Paul Beeson, III, Patterson, and Calvin Shobe with bank robbery. Dkt. # 1. Patterson was arrested and made his initial appearance on August 5, 2011, and Lance Hopkins was appointed to represent defendant. Dkt. # 16. A grand jury returned an indictment (Dkt. # 31) charging Beeson, Patterson, and Shobe with conspiracy to commit an offense against the United States (count one), bank robbery (count two), and using, carrying, and brandishing a firearm during and in relation to a crime of violence (count three). Patterson and Shobe were also charged with possession of a firearm after previous

felony conviction (count four). Patterson filed a motion to sever his trial from that of his co-defendants, because Beeson and Shobe allegedly made out-of-court statements that incriminated Patterson and it was not likely that he would be able to cross-examine them at trial. Dkt. # 51. The Court denied Patterson's motion and found that there is a preference for trying co-conspirators in a single trial. Dkt. # 61. Beeson pled guilty to bank robbery and possession of a firearm in furtherance of a crime of violence, and he agreed to testify for the government at trial. Dkt. # 59, at 2; Dkt. # 66. The trial was delayed due to claims by Shobe's counsel that Shobe was not competent to stand trial, and Patterson objected to a continuance of his own trial while awaiting the results of Shobe's competency proceedings. Dkt. # 71. The government requested a continuance under the Speedy Trial Act, 18 U.S.C.§ 3161 et seq., and it notified the Court and defendants that it would be seeking a superseding indictment to add new criminal charges stemming from a second bank robbery. Dkt. # 72. The Court granted the government's request for a continuance and reset the trial for March 19, 2012. Dkt. # 74.

On January 5, 2012, a grand jury returned a superseding indictment charging Patterson and Shobe with conspiracy to commit an offense against the United States (count one), bank robbery (count two), using, carrying, and brandishing a firearm during and in relation to a crime of violence (count three), possession of a firearm after former felony conviction (count four), conspiracy to commit an offense against the United States (count five), bank robbery (count six), and using, carrying, and brandishing a firearm during and in relation to a crime of violence (count seven).[1] Dkt. # 80. The medical evaluation of Shobe was completed and he was found competent to stand trial.

---

[1] Beeson was not named as a defendant in the superseding indictment. However, La-Tierra Ti-Shawn Byrd was charged as a new defendant in counts five and six.

Dkt. # 100. Patterson notified the Court that he intended to change his plea, and a change of plea hearing was set for February 28, 2012. Dkt. # 102.

At the change of plea hearing, defendant represented that he was changing his plea to counts one, two, three, five, and six pursuant to a plea agreement, and the government agreed to dismiss counts four and seven. Defendant acknowledged that he understood that he would have faced a statutory consecutive mandatory minimum sentence of 25 years as to count seven. Dkt. # 108, at 2-3. Defendant stated that he had been given an opportunity to read the plea agreement and discuss the plea agreement with his attorney. Id. at 6-7. He also stated that the plea agreement represented his complete agreement with the government and he had no other agreement that was not contained in the written plea agreement. Id. at 7. The Court advised defendant that the terms of the plea agreement were recommendations and that he could receive a sentence more severe than he anticipated. Id. at 8. The Court also informed defendant of the maximum punishment he would face as to each count, including that he would be sentenced to a consecutive mandatory minimum sentence of seven years as to count three. Id. at 9. Defendant stated that he understood that he could receive a sentence that was different than any estimate provided by his attorney, and that the Court would not be able to determine his sentence until a presentence investigation report was prepared. Id. at 12-13. The Court reviewed with defendant the appellate and post-conviction waiver contained in the plea agreement:

> THE COURT: And I have an obligation to review that with you on the record. Do you understand that in consideration of the promises and concessions made by the United States in your written plea agreement, you are knowingly and voluntarily agreeing to waive the right to directly appeal your conviction and sentence pursuant to 28 U.S.C. Section 1291 and/or 18 U.S.C., Section 3742(a) except that you reserve the right to appeal from a sentence which exceeds the statutory maximum?
>
> THE DEFENDANT: Yes, ma'am.

> THE COURT: Do you understand you are expressly acknowledging and agreeing that the United States reserves all rights to appeal your sentence as set forth in 18, U.S.C., Section 3742(b) and the case of United States v. Booker?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to collaterally attack your conviction and sentence pursuant to 28 U.S.C. Section 2255 except for claims based on ineffective assistance of counsel which challenge the validity of your guilty plea or your waiver of appellate and post-conviction rights contained in your written plea agreement?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to have your sentence modified pursuant to 18, U.S.C., Section 3582(c) except for a Rule 35(b) motion filed by the government?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to appeal my determination of the amount of restitution or my restitution order
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are expressly acknowledging that Mr. Hopkins has explained your appellate and post-conviction rights, that you understand those rights, and that you are knowingly and voluntarily waiving those rights as set forth in your written plea agreement?
>
> THE DEFENDANT: Yes, ma'am.

Id. at 15-16. The Court reviewed with defendant all of the constitutional rights that he would be waiving by changing his plea, and defendant stated that he was voluntarily waiving those rights. Id. at 17-19. The Court read the charges in the indictment to defendant, and defendant told the Court in his own words how he committed the charged offenses:

> On August 2nd, 2011, I assisted Calvin Shobe and Elijah Walters in planning an armed robbery of the Arvest Bank located around 36th and South Yale Avenue in Tulsa, in the Northern District of Oklahoma. Shobe and Walters drove from their

4

homes in Coffeyville, Kansas, the night before the robbery and they stayed at a motel in west Tulsa off of I-44.

Shobe and Walters already had started planning the robbery and I heard them discussing it. Shobe asked me to be his driver in the plan where I would drive him to an area near the bank. Shobe also manipulated a friend of mine, Joseph Beeson, into actually robbing the bank. Shobe provided Walters and Beeson with the gun and a mask for them to use in the robbery.

Shobe and I rode in one vehicle to an area close to the bank and Beeson and Walters rode in another vehicle to the same area. Walters decided to back out and he got out of the vehicle. He was in and left in the area. Beeson then went ahead and robbed the bank while Shobe and I waited for him, and he brought the money from the robbery and the gun back to our vehicle and Shobe took it from him and told me to drive.

Shobe offered me 1,000 [dollars] for my role in driving him, and he promised Beeson that he would help him get a recording deal as a music artist. Beeson and I had just lost our jobs and agreed to participate because we needed the money.

On or about July 7, 2011, Calvin Shobe, Ti-Shawn Byrd and a teen-age boy in high school with the initials Q.Y. who was Shobe's cousin all came to the house where I was staying at the time. Shobe told me that they were on their way to rob the City National Bank near 51st and South Lewis in Tulsa, in the Northern District of Oklahoma, and he asked me to ride with him to an area near the bank where we would wait while Q.Y. would rob the bank with the gun and then bring the money and the gun back to Shobe. I had been present with Shobe and Q.Y. on previous days where this plan had been previously discussed. While we were at my house, Q.Y. changed into the clothes that he would wear while committing the robbery. Shobe wanted me to hang out with him at a barber shop close to the bank where Byrd would drive us to and drop us off with her and then dropping Q.Y. off at the bank so that he could rob it.

After the robbery, Byrd picked us up at the barber shop and we then went back up to my house where Q.Y. changed out of the clothes he wore during the robbery. Shobe, Byrd and Q.Y. then went to Coffeyville, Kansas. Shobe took with him the money from the robbery and the gun used and told me that he would pay me some money for helping him in a few days.

Id. at 24-26. Defendant added that he did not actually receive any of the proceeds from the robberies, but he was part of a conspiracy to commit the robberies. Id. at 27. The parties stipulated that banks robbed were insured by the Federal Deposit Insurance Corporation. Id. The Court found

5

that defendant's guilty pleas were knowing and voluntary, and the Court found defendant guilty of counts one, two, three, five, and six. Id. at 29.

Defendant also submitted a written petition to enter guilty plea (Dkt. # 105), and he told the Court that he had an opportunity to review the petition with his attorney and that all of his representations in the petition were "true, correct, and complete." Dkt. # 108, at 19-20. In the petition, defendant admits to the following facts:

> I participated with, and aided and abetted, Calvin Shobe and others in conspiracies to facilitate two armed robberies in Tulsa County, Oklahoma.
>
> On or about August 2, 2011, I assisted Calvin Shobe in picking out a bank for other people to rob on our behalf, which was an Arvest Bank located on Yale Avenue in the City of Tulsa. Calvin Shobe and I provided Jospeh Paul Beeson with a mask, a gun, and a bag and persuaded him to rob the bank. Joseph Paul Beeson then robbed the bank brandishing the gun and stole about $4,068.00. After he robbed the bank, Joseph Paul Beeson met Calvin Shobe and I at a prearranged location and gave us the money from the robbery and the gun he used to commit the robbery.
>
> On or about July 7, 2011, I assisted Calvin Shobe, Tishawn Byrd, and a juvenile with the initials of Q.Y., in facilitating the armed robbery of a City National Bank on Lewis Avenue in the City of Tulsa. I assisted Calvin Shobe in picking out a bank to rob and provided Q.Y. with a gun, backpack, clothes and a bandana to [be] used during the robbery. Tishawn Byrd drove all four of us to an area near the bank where Q.Y. exited to the vehicle and walked on foot to the bank and then robbed the bank using the gun, obtaining about $4,618.00 in the robbery. After the robbery, Tishawn Byrd picked up Q.Y. at an area near the bank and drove him to another location in the City of Tulsa where Q.Y. met with Calvin and me, and then Q.Y. gave the money to Calvin and me.

Dkt. # 105, at 2. Defendant stated that he was changing his plea pursuant to a plea agreement, and he acknowledged that he was avoiding a 25 year consecutive mandatory minimum sentence as to count seven. Id. He also informed the Court that he was not "relying, in entering my plea(s) of Guilty, on any representation from my attorney or from the Government or any other source that has not been revealed to the Court and made a part of this record." Id. Defendant's sentencing hearing was set for June 1, 2012.

6

Shobe did not change his plea and he exercised his right to a jury trial. Defendant testified as part of the government's case-in-chief, and he disclosed that he had pled guilty pursuant to a plea agreement with the government. Dkt. # 225, at 28-30. He stated that he voluntarily pled guilty and he understood that the Court would ultimately be responsible for determining his sentence. Id. at 29-30. Defendant testified that he had known Shobe for about five years and he worked with Beeson. Id. at 32-33. On the evening of August 1, 2011, defendant, Shobe, Beeson, and Elijah Walters planned the robbery of the City National Bank. Id. at 36-37. Defendant believed that he would receive $1,000 from the proceeds of the robbery. Id. at 38. The original plan was for Walters to carry a gun and hold hostages if necessary, and Beeson would collect money from bank employees. Id. Shobe and defendant were both primarily responsible for planning the robbery, but defendant testified that Shobe supplied the firearm for the robbery. Id. at 39-40. Shobe and defendant instructed Beeson and Walters as to how to carry out the robbery. Id. at 43. On August 2, 2011, defendant and Shobe drove to an agreed meeting place where Walters and Beeson would come after the robbery, but only Beeson arrived at the meeting place and he informed defendant and Shobe that Walters had decided not to participate in the robbery. Id. at 47. Beeson also wanted to back out of the planned robbery, but Shobe talked Beeson into robbing the bank. Id. Beeson robbed the bank and returned to the meeting place with a bag of money, and Shobe took the money and the gun from Beeson. Id. at 48. Tulsa Police Department (TPD) officers located defendant and Shobe later on August 2, 2011, and they were arrested while in possession of the bag of stolen money and firearm. Id. at 49-50. Defendant testified that he initially refused to cooperate with the police, but he later met with federal law enforcement officials and admitted his involvement in the robbery of the City National Bank. Id. at 52. Defendant was subsequently charged with participating in the

7

robbery of an Arvest Bank on July 7, 2011. Shobe came to Tulsa on July 6, 2011, and he brought Byrd and Q.Y. to participate in the robbery. Id. at 57. Defendant believed that Q.Y. was about 17 or 18 years old, and Byrd was Shobe's girlfriend. Id. Defendant participated in planning the robbery of the Arvest Bank, and Shobe offered to pay defendant $1,000 if he assisted with the robbery. Id. at 59-60. Defendant and Shobe provided Q.Y. with a mask, a bag, and a gun, and Q.Y. agreed to enter the bank and take the money. Id. at 61-62. Byrd drove defendant and Shobe to a barber shop to wait while the robbery took place. Id. at 63. Q.Y. robbed the Arvest Bank and gave a backpack with the stolen money to Shobe, but Shobe never paid any money to defendant. Id. at 65. Defendant admitted that he aided and abetted others in committing the robberies of the City National Bank and the Arvest Bank. Id. at 68.

A presentence investigation report (PSR) was prepared and the sentencing hearing was accelerated to May 23, 2012. The parties did not have any objections to the PSR, but defendant did file a motion for downward variance (Dkt. # 175). As to counts one, two, five, and six, counts involving the same robbery were grouped, and the advisory guideline range for counts one and two and counts five and six were calculated separately. The adjusted offense level for counts one and two was 22, and the adjusted offense level for counts five and six was 28.[2] After an advisory guideline range for each group was determined, a multi-count adjustment was applied to reach a single advisory guideline range for counts one, two, five, and six. Defendant's total offense level

---

[2]  The offense level for counts five and six was higher due to a six level enhancement for the use of a firearm during the bank robbery.

for these counts was 31 and his criminal history category was VI,[3] and this resulted in an advisory guideline range of 188 to 235 months. As to count three, defendant faced a statutory mandatory minimum sentence of 84 months that was required to run consecutively to any other sentence imposed. Dkt. # 228, at 4. The Court took into account that defendant's testimony was "instrumental" in obtaining a conviction of Shobe and that defendant did not actually receive any money from the robberies. Id. at 9. Defendant read a prepared statement to the Court. He apologized to the victims of the offense and accepted full responsibility for his crimes, and he asked the Court for lenience when imposing his sentence. Id. at 10-11. He also stated that he wanted to form a nonprofit organization to help at-risk youth after he was released from prison. Id. at 12. The Court granted defendant's motion for a downward variance and varied seven levels downward as to counts one, two, five, and six. This resulted in a total offense level of 24 and, with a criminal history category of VI, defendant's advisory guideline range as to counts two and six was 100 to 125 months. The advisory guideline range for counts one and five was 60 months because that is the statutory maximum. Id. at 15-16. The Court sentenced defendant to 60 months as to counts one and five and 108 months as to counts two and six, and defendant was sentenced to the statutory mandatory minimum of 84 months as to count three. The sentences for counts one, two, five, and six were ordered to run concurrently with each other, and the 84 month sentence for count three was required by statute to run consecutively to the sentence imposed on the other counts. This resulted

---

[3] Defendant was classified as a career offender under the United States Sentencing Guidelines (USSG) due the nature of his prior offenses and the number of criminal history points. This increased his advisory guideline range for counts one, two, five, and six to 34, but he received a three level reduction for acceptance of responsibility and this resulted in a total offense level of 31 for these counts.

in a total sentence of imprisonment of 192 months. Id. at 17. Counts four and seven were dismissed. Id. at 21-22.

Defendant appealed his sentence to the Tenth Circuit Court of Appeals. Dkt. # 181. The government asked the Tenth Circuit to enforce defendant's appellate waiver and dismiss the appeal. On August 20, 2012, the Tenth Circuit granted the government's request to enforce the appellate waiver and dismissed defendant's appeal. Dkt. # 200. Defendant did not file a petition for writ of certiorari, and his conviction became final on November 19, 2012. On September 18, 2013, defendant filed a § 2255 motion alleging claims of ineffective assistance of counsel. Defendant's § 2255 motion was filed within one year of the date his conviction became final, and his § 2255 motion is timely under § 2255(f)(1).

## II.

Defendant argues that he received ineffective assistance of counsel during plea negotiations and the sentencing phase of the case. The government asks the Court to dismiss many of defendant's claims of ineffective assistance of counsel pursuant to the post-conviction waiver contained in defendant's plea agreement. It also argues that any claims that are not within the scope of the post-conviction waiver are meritless. Construing defendant's pro se § 2255 motion liberally, it appears that he is alleging the following claims:

1) Defense counsel should have objected to the PSR's finding that defendant was a career offender under the USSG. Dkt. # 246, at 14-17.

2) Defense counsel incorrectly advised defendant that he would receive a sentence between 51 and 63 months if he changed his plea to guilty. Id. at 18-19.

3) The government breached a secret plea agreement it made with defendant that he would receive a sentence of 51 to 63 months if he cooperated with the government. Id. at 20.

10

4) Defense counsel was ineffective for encouraging defendant to waive his appellate rights. Id. at 21-24.

5) Defendant informed his attorney that he wanted to go to trial and defense counsel was ineffective for advising defendant to change his plea to guilty. Id. at 25-26, 29-32.

6) Defense counsel provided ineffective assistance of counsel by failing to give defendant a copy of the PSR and other materials before the sentencing hearing. Id. at 27-28.

7) Defense counsel was ineffective for failing to object to a firearms enhancement in the PSR. Id. at 29.

8) Defendant was actually innocent of all charges against him. Id. at 33-38.

The government argues that defendant's plea agreement contains a waiver of certain post-conviction rights, and some of defendant's claims fall within the scope of the waiver. The Tenth Circuit has established a three-part test to determine if an appellate and post-conviction waiver is enforceable:

> (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice . . . .

United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004). In determining the scope of an appellate or post-conviction waiver, a court must strictly construe the waiver in favor of the defendant and evaluate the scope of the waiver "in light of the defendant's reasonable understanding at the time of the guilty plea." United States v. Novosel, 481 F.3d 1288, 1291 n.1 (10th Cir. 2007). Challenges to the voluntariness of a guilty plea generally do not fall within the scope of a waiver. United States v. Weeks, 653 F.3d 1188, 1197 n.4 (10th Cir. 2011). Hahn requires the consideration of two factors in considering whether a defendant knowingly and voluntarily agreed to an appellate and post-conviction waiver. First, the court "examine[s] whether the language of the plea agreement

11

states that the defendant entered the agreement knowingly and voluntarily." Hahn, 359 F.3d at 1325. Second, the guilty plea must be the result of an adequate colloquy under Fed. R. Crim. P. 11. Id. A miscarriage of justice may result "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful. Id. at 1327 (quoting United States v. Elliot, 264 F.3d 1171, 1173 (10th Cir. 2001)). A defendant may not avoid enforcement of a waiver under the "otherwise unlawful" exception based on alleged errors in the calculation of his sentence, because this exception is focused on the fairness of the proceedings, rather than result of the proceedings. United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007). A miscarriage of justice does not occur when a defendant receives a sentence higher than he expected if that sentence does not exceed the statutory maximum. United States v. Green, 405 F.3d 1180, 1194 (10th Cir. 2005) (courts should consider the statutory maximum, not the defendant's anticipated sentence under the United States Sentencing Guidelines, to determine if a miscarriage of justice has occurred). The defendant bears the burden to show that a miscarriage of justice has occurred. United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir. 2005).

In this case, defendant agreed to waive "the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver." Dkt. # 106, at 4. Several of defendant's claim fall within the scope of this waiver of post-conviction rights. Defendant argues that his attorney failed to object to the PSR (grounds one and seven) and that he was actually innocent of the charges against him (ground eight). Defendant's claim that defense counsel failed

12

to provide him a copy of the PSR and other documents related to sentencing (ground six) does not go to the validity of defendant's guilty plea. The remainder of defendant's claims can reasonably be viewed as attacking the validity of his guilty plea or the appellate and post-conviction waiver. The Tenth Circuit has already determined that defendant's appellate waiver is enforceable, and this Court applies the same test to determine if the waiver of post-conviction rights is valid. Dkt. # 220, at 2. The Court reviewed the post-conviction waiver with defendant on the record, and defendant stated that he was knowingly and voluntarily waiving those rights. Dkt. # 108, at 15-16. Defendant has challenged the validity of the post-conviction waiver only after he received a sentence that exceeded what he expected to receive, but this does not show that his decision to sign the plea agreement was involuntary. Green, 405 F.3d at 1194. This also does not show that a miscarriage of justice will result from enforcement of the post-conviction waiver. As is explained below, defendant did not receive ineffective assistance of counsel in the negotiation of his appellate and post-conviction waiver. Defendant has not shown that enforcement of his post-conviction waiver will result in a miscarriage of justice, and the Court finds that grounds one, six, seven, and eight of defendant's § 2255 motion should be dismissed pursuant to defendant's post-conviction waiver.

## III.

Defendant argues that he received ineffective assistance of counsel in connection with his guilty plea and the negotiation of his appellate and post-conviction waiver. The Court has determined that grounds two, three, four, and five challenge the validity of his guilty plea or the appellate and post-conviction waiver, and those claims are not subject to dismissal under defendant's waiver of his post-conviction rights.

13

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

In grounds two and three, defendant argues that his attorney advised him that he would receive a sentence between 51 and 63 months if he accepted the plea agreement. Dkt. # 246, at 18-

19. He also claims that he had a secret plea agreement with the government for a total sentence of 51 to 63 months, and his guilty pleas should be deemed invalid because the government breached the secret plea agreement. Id. at 20. Defendant's argument is meritless. Defense counsel states that he ran a criminal history report for defendant, and he calculated an advisory guideline range for defendant based on the convictions disclosed in the report. Dkt. # 255-5, at 3. The criminal history report did not show that defendant had been convicted of battery in Sedgwick County, Kansas in 2007, and defendant did not provide this information to defense counsel. Id. Based on the information available to defense counsel, defense counsel advised defendant that he would receive a sentence between 7 and 13 years imprisonment. Id. The inclusion of the 2007 battery conviction in defendant's criminal history contributed to the enhancement of defendant's sentence as a career offender. Defendant acknowledges that a second § 924(c) count (count seven) was dismissed pursuant to the plea agreement, but he fails to acknowledge that he was still going to receive a statutory mandatory minimum sentence of 84 months as to count three, plus any additional term of imprisonment for counts one, two, five and six. Even assuming that defendant were to receive a reduction of his sentence for cooperation, it was extremely unlikely that he would have been sentenced to a total term of imprisonment of 51 to 63 months. Defendant also fails to acknowledge that he could have advised his attorney about the 2007 battery conviction, and defendant's failure to properly advise counsel of his criminal history contributed to the erroneous sentencing advice. Tenth Circuit precedent is clear that a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance arising to the level of ineffective assistance of counsel." United States v. Parker, 720 F.3d 781, 788 n.9 (10th Cir. 2013) (quoting United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993)). The record is also clear that the Court specifically

advised defendant of the statutory mandatory minimum sentence as to count three and the statutory maximum as to counts one, two, five, and six, and that the Court would not be able to determine his sentence until it had reviewed the PSR. Dkt. # 108, at 8-9, 12-13. Defendant's allegations that he received erroneous advice about his possible sentence does not show that his guilty plea was involuntary or invalid.

As to defendant's argument that he had a secret plea agreement with the government, defendant advised the Court at his change of plea hearing that the written plea agreement represented his complete agreement with the government, and defendant made this statement while under oath. Dkt. # 108, at 7. The Court was permitted to rely on his representations at the change of plea hearing, and he may not attempt to contradict the plain terms of his written plea agreement in a § 2255 motion. Baker v. United States, 781 F.2d 85, 90 (5th Cir. 1986) ("The Court holds therefore that where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court . . ."). Defendant's alleged belief that he had a secret plea agreement with the government was not binding on the Court, and he has not shown that defense counsel performed deficiently by failing to advise the Court of a "secret" plea agreement. The Court finds that grounds two and three of defendant's § 2255 motion should be denied.

Defendant argues (ground four) that defense counsel was ineffective for advising defendant to sign a plea agreement containing a waiver of his appellate and post-conviction rights. Dkt. # 246, at 21. He alleges that defense counsel did not fully explain the consequences of signing the plea agreement to defendant, and defendant did not understand that he would be sentenced as a career

16

offender. Dkt. # 246, at 21-24. The Court has already rejected defendant's argument that erroneous sentencing advice renders his appellate and post-conviction waiver invalid. The plea agreement also expressly states that:

> The defendant is further aware that the sentence has not yet been determined by the Court that any estimate of the likely sentence received from any source is a prediction, not a promise, and that the Court has the final discretion to impose any sentence up to the statutory maximum. The defendant further understands that all recommendations or requests by the United States pursuant to this agreement are not binding upon the Court.
>
> If the sentencing court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw defendant's guilty plea, but will remain bound to fulfill all of defendant's obligations under this agreement.

Dkt. # 106, at 14. The Court advised defendant that he could receive a sentence more severe than any estimate provided by his attorney and that any estimate of defendant's advisory guideline range provided by defense counsel was not binding on the Court, but he would have an opportunity to challenge the PSR before a sentence was imposed. Dkt. # 108, at 8, 12-13. Defendant was fully advised that any estimates of his sentence were not binding on the Court and that he could not withdraw his guilty pleas merely because he received a sentence higher than he anticipated. Id. Defendant's dissatisfaction with his sentence does not show his decision to sign a plea agreement containing an appellate and post-conviction waiver was involuntary, and he has not shown that the appellate and post-conviction waiver is invalid. Ground four of defendant's § 2255 motion should be denied.

In ground five, defendant argues that he told his attorney that he wanted to go to trial, and he claims that defense counsel was ineffective for encouraging defendant to change his plea when he claimed to be innocent. Dkt. # 106, at 26. He claims that defense counsel pressured him into

17

changing his plea by suggesting that the government would offer the testimony of co-defendants to frame defendant for the bank robberies. Id. Hopkins acknowledges that defendant initially asserted his innocence but Hopkins advised defendant that Shobe was attempting to negotiate a plea agreement with the government. Dkt. # 255-5, at 4. However, Hopkins advised defendant that he was likely to be convicted at trial, even without Shobe's testimony, because the government had overwhelming evidence on each count and defendant would be facing a sentence of approximately 40 years if he went to trial and was convicted on all counts. Id. The Court will accept as true defendant's allegations that he felt "pressured" to change his plea, but there is no ineffective assistance of counsel when defendant receives accurate advice about the risks of going to trial and voluntarily chooses to change his plea to guilty. Hopkins was correct that there was overwhelming evidence of defendant's guilt, including the testimony of co-conspirators Q.Y. and Beeson. The Court also takes into account defendant's admissions of guilt at his change of plea hearing and during his trial testimony. The record shows that the Hopkins accurately advised defendant as to the weight of the evidence against him and defendant chose to change his plea pursuant to a favorable plea agreement, and the Court does not find that Hopkins was ineffective for advising defendant to change his plea to guilty. Ground five of defendant's § 2255 motion should be denied. The Court has construed defendant's § 2255 motion broadly and can discern no other claims for relief.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 246) is **denied**. A separate judgment is entered herewith.

**DATED** this 22nd day of May, 2015.

*Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE